**C.S., Jr., Petitioner–Appellant,**

v.

**L.K.M., and the Division of Child Support Enforcement, Respondents–Respondents.**

**No. 24364.**

Missouri Court of Appeals, Southern District, Division Two.

April 1, 2002.

Petition for Rehearing and Transfer Denied
April 23, 2002.

Application for Transfer Denied
May 28, 2002.

John M. Albright, Moore & Walsh, L.L.P., Poplar Bluff, for appellant.

Michael Brookerson, Poplar Bluff, for respondent L.K.M.

J. Michael Cato, Cape Girardeau, for respondent Division of Child Support Enforcement.

ALMON H. MAUS, Senior Judge.

By a Default Administrative Order, the Division of Child Support Enforcement ("DCSE") determined that Petitioner was the father of and obligated to support two children. § 454.470, RSMo 2000. By this action, Petitioner seeks the declaration of the court that he is not the father of the youngest of the two children named in the

Administrative Order.[1] DCSE filed an answer to the original petition. This answer incorporated a copy of the relevant Notice and Finding of Financial Responsibility (hereafter referred to as "the Notice"), the Default Administrative Order and the decree dissolving Petitioner's marriage to the mother named in the Notice. After an amended petition was filed, DCSE filed a Motion to Dismiss alleging and reciting the steps that resulted in the Default Administrative Order and seeking dismissal upon several grounds including Petitioner's failure to exhaust his administrative remedies.

This Court has recently considered the procedure before the DCSE and the requirement of notice in *McDonald v. Thompson*, 35 S.W.3d 906 (Mo.App.2001). The comprehensive and incisive opinion in that case is mandatory reading for the full understanding and appreciation of the issues in this case.

As provided in Rule 55.28, the court held a hearing for the determination of the motion to dismiss.[2] Upon the hearing, the trial court ordered the submission of briefs. After consideration of the briefs, the circuit court entered a judgment dismissing the petition with prejudice because the Petitioner failed to exhaust his administrative remedies as required by Chapter 536, RSMo.

No transcript has been filed which establishes the relevant facts. The legal file includes the pleadings with attached exhibits, the Petitioner's trial court brief which includes a recitation of facts, and DCSE's trial court brief which also contains a recitation of facts. The brief of each party filed in this Court also contains a statement of facts, neither of which is a model of presentation or completeness. This Court must glean the facts from admissions found in or resulting from the pleadings, the undisputed exhibits, and the briefs. "Where a statement of fact is asserted in one party's brief and conceded to be true in the adversary's brief, we may consider it as though it appears in the record." *In re Marriage of Bloom*, 926 S.W.2d 512, 514 (Mo.App.1996). *See also In re Trust of Nitsche*, 46 S.W.3d 682, 684 (Mo.App.2001). The following is an outline of the pertinent facts established in that manner.

Petitioner was married to L.K.M on August 24,1985. The parties separated on July 19, 1986, and L.K.M moved to another state. D.A.S. was born on November 19, 1986. This is the first child named in the Notice and Default Order issued by DCSE as a child of Petitioner. The Petitioner has acknowledged that he is the father of D.A.S. L.K.M subsequently gave birth to four additional children, including M.M. who was born December 20, 1992. M.M. is the second child named in the Notice and Order. The Default Order finds that Petitioner is the father of and obligated to provide financial and medical support for both children. Petitioner, by his Petition, denies he is the father of M.M. and seeks a declaration that he is not.

On June 3, 1993, the Petitioner obtained a decree dissolving his marriage to L.K.M. The decree found that one child, D.A.S., had been born to the marriage. The Petitioner obliquely argues that the DCSE is enforcing the right of L.K.M. for support of the second child, not named in the decree. Therefore, he asserts that DCSE is

---

**1.** An action to determine paternity is authorized by § 210.826, RSMo 2000. Before the 1993 amendment to this section, effective August 28, 1993, such an action had to be brought within five years of the birth of the child. This limitation was eliminated by that amendment. *See Anderson v. Div. of Child Support Enforcement*, 995 S.W.2d 546, 549 (Mo.App.1999).

**2.** *See Farris v. Boyke*, 936 S.W.2d 197, 200 (Mo.App.1996).

estopped by that decree from finding otherwise.[3] This point has not been developed by the parties. As stated, the petition was dismissed because the Petitioner failed to exhaust his administrative remedies. In view of the disposition of this case upon that issue, that oblique argument will not be further considered.

 It is a well-established rule that the exhaustion of administrative remedies is a prerequisite to the jurisdiction of a court to review the action complained of. *See State ex rel Maynes Constr. Co., Inc. v. City of Wildwood,* 965 S.W.2d 949, 952 (Mo.App.1998) (regarding party aggrieved by administrative zoning decision). However, that rule applies only where the administrative remedy available is adequate.[4] It does not apply when the complaining party has no notice of the administrative action complained of. In administrative proceedings, "[n]otice and an opportunity to be heard must be provided by the state in a meaningful manner prior to the deprivation of a protected interest." *Farmington R–VII School Dist. v. Allen,* 676 S.W.2d 53, 55 (Mo.App.1984). *See also State ex rel. Williams v. Marsh,* 626 S.W.2d 223, 230 (Mo.banc 1982).[5]

The basic argument of the Petitioner is that the dismissal was erroneous because the Default Order was entered without notice and thereby he was denied due process. He argues that by reason of the terms of the Notice and the fact he did contact an investigator, the Notice did not give him notice that a hearing could be held at which an order of support for the second child could be entered against him by the DCSE. It is a fair inference that he complained to the investigator that he was not the father of and not obligated to support the second child.[6] He did not after contacting the Investigator receive a second notice of a hearing. He anticipated a second notice if his complaint was rejected.

To counter, the DCSE argues that the Notice, even though the Petitioner did contact the investigator, does not require a second notice. Therefore, the Default Order was properly entered and the Petitioner was not denied due process. Obviously, this decisive point requires construction of the Notice.

Petitioner emphasizes a provision in paragraph 2 that states that if "after you and the investigator have a conference, (s)he gives you a second Notice, you have an additional 20 calendar days to request an administrative hearing." The DCSE cites that portion of paragraph 1 that states: "If your information is new to the investigator, (s)he may issue a second **No-**

---

3. "It is well established 'that a finding or implication of paternity in a divorce or annulment decree, or in an incidental support or custody order, is res judicata on the issue of paternity in subsequent proceedings between the former spouses and that each of them is bound by the prior paternity determination.' " *K.E.A. v. T.A.A.,* 765 S.W.2d 389, 391 (Mo.App.1989) (quoting *In re Marriage of Campbell,* 741 S.W.2d 294, 296 (Mo.App.1987)).

4. "All of these statements of the rule presuppose an adequate administrative remedy." *Farm Bureau Town & Country Ins. Co. of Mo. v. Angoff,* 909 S.W.2d 348, 352 (Mo.banc 1995).

5. "The record on appeal does not establish that petitioner received notice of a suspension of his Missouri driving privileges. If no notice was given, there was no suspension. Under those circumstances, no administrative remedy existed." *Robinson v. Director of Revenue,* 32 S.W.3d 148, 151–52 (Mo.App.2000).

6. It is appropriate to note the Petitioner states that after contacting the investigator he paid support only on one child. It was after his file was transferred to Jefferson City that the DCSE sought to enforce the Default Order for the support of the two children. It was at that time that the Petitioner initiated this action.

tice based on the new information." [7] DCSE further cites a portion of the form that provides that the investigator will "present evidence in support of an order for the obligations described in this Notice, or, **if there is one, a second Notice."** (Emphasis by DCSE). DCSE also cites § 454.470.1(6) and (7), RSMo.[8]

■■■ To say the least, the form is ambiguous concerning whether, after the Petitioner contacted an investigator, a second notice was required before the entry of the Default Order. When the interests of a person are sought to be affected by a judicial or quasi-judicial decree, due process requires that person be given notice reasonably calculated to inform that person of the pending proceeding and an opportunity to appear and object.[9] Due process requires that the Notice provide the petitioner with "meaningful notice" that even though he contacted an investigator a default order would be entered against him. Whether or not it does so is not to be viewed with the fine distinctions of dictionary definitions and legal arguments, but from the standpoint of the recipient. The requirement of a second notice if a complaint is rejected is implicit in the fact the form has provision for a second notice. A reasonable recipient could conclude that, if a second notice is not required, why say anything about a second notice. A construction, which would satisfy due process, is that DCSE may disregard the information and, if so, a second notice will be given.

■ As no second notice was given the Petitioner, the rule requiring the exhaustion of the administrative remedy of a hearing before the DCSE and subsequent review is not applicable to deprive the circuit court of jurisdiction of Petitioner's petition for declaratory judgment.

■ Petitioner also cites § 454.485.4, RSMo, which in part provides: "In no event shall a hearing official conducting a hearing pursuant to sections 454.460 to

7. DCSE does not cite that portion of paragraph 1 that states "If you, the other party and the investigator cannot agree, and you fail to ask for an administrative hearing within 20 calendar days of receiving this **Notice,** the investigator will file an order without your consent, based on the information available to him/her." This would appear to be an acknowledgement that there is a distinction between an investigator filing a proposed order and the entry of an administrative order by DCSE.

8. Section 454.470, RSMo is the source of the authority of DCSE to issue the Notice and Finding of Financial Responsibility. It prescribes the terms of the notice. Subsection (6) provides that if a parent desires to discuss the amount of support that should be paid, he may, within twenty days, contact the division office and request a negotiation conference. It then adds "[i]f no agreement is reached ... the director may issue a new notice." Subsection (7) adds that "if the director issues a new notice ... the parent ... shall have twenty days from the issuance of the new notice to send a hearing request." In view of the similarity of the terms of the Notice and the statute, the construction herein accorded the Notice is equally applicable to the statute.

9. An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Milliken v. Meyer,* 311 U.S. 457 [61 S.Ct. 339, 85 L.Ed. 278]; *Grannis v. Ordean,* 234 U.S. 385 [34 S.Ct. 779, 58 L.Ed. 1363]; *Priest v. Las Vegas,* 232 U.S. 604 [34 S.Ct. 443, 58 L.Ed. 751]; *Roller v. Holly,* 176 U.S. 398 [20 S.Ct. 410, 44 L.Ed. 520]. The notice must be of such nature as reasonably to convey the required information, *Grannis v. Ordean, supra,* and it must afford a reasonable time for those interested to make their appearance. *Roller v. Holly, supra,* and *cf. Goodrich v. Ferris,* 214 U.S. 71 [29 S.Ct. 580, 53 L.Ed. 914].

*Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

454.510 be authorized to enter a finding of nonpaternity in the case of a man presumed to be the biological father ... unless such presumption has been overruled, ... by a court of competent jurisdiction." Petitioner argues this results in the administrative remedy before the DCSE to contest the allegations of the Notice and Findings and the amount of child support to be non-existent or at least inadequate. DCSE counters that "had [Petitioner] exhausted his administrative remedies and filed a timely petition for judicial review, he could have obtained relief." This argument overlooks the fact that upon judicial review of the DCSE action a "court of competent jurisdiction" would be reviewing whether or not the DCSE erred in declining to determine Petitioner's paternity. It would not be deciding the issue of paternity.

DCSE's motion to dismiss also asserted other bases for the trial court to dismiss Petitioner's petition. While those bases allege what may ultimately constitute trial court error, they do not at this time constitute a basis requiring dismissal of the petition.

The judgment of dismissal is reversed and the cause remanded to the trial court for further proceedings.

PREWITT and RAHMEYER, JJ., concur.